**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff <br><br> v. <br><br> ALBERT GONZÁLEZ-ARIMONT, <br><br> Defendant. | **CRIM NO.** 98-249 (RAM) |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Albert González-Arimont ("Defendant" or "González")'s *Motion for Reduction in Sentence* ("*Motion*") (Docket No. 110). The United States of America (the "Government") opposes the *Motion*. (Docket No. 121). For the reasons set forth below, the *Motion* is **DENIED**.

## I.   PROCEDURAL BACKGROUND

On December 30, 1996, González and a coconspirator "carjacked" Santo Santos Jordan at gunpoint before shooting and killing him. United States v. Gonzalez-Arimont, 268 F.3d 8, 10 (1st Cir. 2001). On June 11, 1997, González was charged with "committing a carjacking that resulted in the death of the victim." United States v. Gonzalez-Arimont, 1999 WL 151526, at *1 (D.P.R. 1999). On October 16, 1998, then-Judge José A. Fusté transferred

Defendant's case to adult-status prosecution. Id. On November 23, 1998, a two-count indictment was filed against González in the criminal case with the above caption and number. Id.; (Docket No. 1). The first count was for aiding and abetting an armed carjacking resulting in death, while the second was for using a firearm in connection with that offense. (Docket No. 80 at 3).

On June 16, 1999, González pled guilty to both counts. Gonzalez-Arimont, 268 F.3d at 10 (1st Cir. 2001); (Docket No. 20). On March 28, 2000, he was sentenced to a prison term of 405 months as to the first count and 60 months as to the second count, to be served consecutively. (Docket No. 39). On October 11, 2001, the First Circuit affirmed the judgment of the District Court. Gonzalez-Arimont, 268 F.3d at 10 (1st Cir. 2001).

On July 30, 2025, González filed the instant *Motion*. (Docket No. 110). Therein, he contends that "extraordinary and compelling" circumstances in his case "are meritorious of this Court's review and reduction of his sentence." Id. at 4. González provides numerous shifting bases for an "extraordinary and compelling" finding: that the 2023 amendments to § 1B1.13 of the Sentencing Guidelines permit courts to deem sentences "unusually long" if a change in law creates a gross disparity with the sentence likely to be imposed today; that the Supreme Court's decision in United States v. Booker has made sentencing guidelines nonmandatory and

given the Court discretion to permit a downward variance; that a "catchall provision" of § 1B1.13 of the Sentencing Guidelines allows for an extraordinary and compelling finding for a combination of any set of circumstances; that González was young at the time of his offense; that the circumstances of his upbringing were harsh on him; that he has since been rehabilitated; and that his sentence is well above the national average for murder. Id. at 6-21. González also avers that the Section 3553(a) factors favor release in his case, since he has "turn[ed] his life around" and completed over one thousand hours of vocational and educational training. Id. at 21-22. Moreover, González argues that since he has already served twenty-eight years in prison, deterrence interests and respect for the law are satisfied. Id. at 22-24. Lastly, he argues that his family's strong support for him also carries "some weight" in the Section 3553(a) calculus. Id. at 24-25.

On August 29, 2025, the Government filed its Response. (Docket No. 121). Therein, the Government argues that González failed to exhaust the administrative remedies available to him, since his request for compassionate release made to the Federal Bureau of Prisons ("BOP") relied solely on his father's health issues. Id. at 3-5. González allegedly did not present all of his present

various bases for an "extraordinary and compelling" finding to the Warden of his facility. Id.

In the alternative and reaching the merits of the *Motion*, the Government contends that González has failed to identify a genuinely "extraordinary and compelling" reason warranting a sentence reduction. Id. at 5. More specifically, the Government argues that González does not have an unusually long sentence and cannot point to a change in law that would create disparity if he were resentenced today. Id. at 6-8. Similarly, the Government contends that González's alleged rehabilitation does not justify a sentence reduction, since statutory authority and the case law do not permit a finding of rehabilitation to legitimize a sentence reduction on its own. Id. at 8-10. According to the Government, the same is true of González's youth at the time of his offense, since facts existing at the time of sentencing cannot later be construed as justification for reduction. Id. at 10. The Government also points out that much of González's *Motion* is made up of "generic studies" without development of how that information applies to him specifically. Id. at 11-12. Lastly, the Government argues that González has failed to show that the Section 3553(a) factors militate in favor of compassionate release: his crimes are serious, his BOP disciplinary record evinces 45 violations including an assault resulting in serious injury, *see also* (Docket

No. 110-11 at 29), he has not shown remorse, a reduction would minimize the seriousness of the offense, and he continues to pose a danger to the public. (Docket No. 121 at 13-16).

On September 29, 2025, González filed a *Reply* to the Government's *Response*. (Docket No. 127). In it, he retorts that "few circumstances are more extraordinary than sentencing a teenager to nearly four decades in prison under a mandatory guideline regime"; that Booker provides the necessary transformation in law; that his sentencing under a mandatory regime suggests he would receive a different sentence today; and that the punishment he has received "is far harsher than the national and local averages for similarly situated defendants." Id. at 2-11. González also avers that First Circuit precedent allows consideration of petitioners' youth. Id. at 11. González describes the science and studies he cites as "well-settled" and insists that they ought to be considered on account of his underdevelopment at the time of the offense. Id. at 11-13. He contends that he is not a danger and that the Section 3553(a) factors militate in favor of compassionate release because his disciplinary infractions occurred in prison where conflict is routine, because he has expressed great remorse for his crime, and because the desire to provide just punishment and create deterrence is satisfied by the nearly three decades he has spent in prison. Id. at 14-18. Lastly,

Criminal No. 98-249(RAM)                                                    6

González insists that he has exhausted administrative remedies simply by submitting his request to the BOP. Id. at 18-21.

## II. APPLICABLE LAW

### A. The compassionate release regime

Ordinarily, a court may not modify a term of imprisonment once it is imposed. *See* 18 U.S.C. § 3582(c). However, it may grant compassionate release to a defendant subject to certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A).

Pursuant to § 3582(c)(1)(A), a court may not modify a final sentence until "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Id. Once these conditions are met, the district court must consider "the factors set forth in section 3553(a) to the extent that they are applicable," and find that there are "extraordinary and compelling reasons" warranting the requested reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *see also* United States v. Saccoccia, 10 F.4th 1, 4 (1st Cir. 2021) (providing general principles for evaluating compassionate release motions).

The United States Sentencing Commission's ("USSC") policy statement on prisoner-initiated motions for compassionate release provides further direction. *See* U.S.S.G. § 1B1.13. Pursuant to

First Circuit precedent, "district courts addressing such motions not only will be bound by the statutory criteria but also will be required to ensure that their determinations of extraordinary and compelling reasons are consistent with that [policy statement's] guidance." United States v. Ruvalcaba, 26 F.4th 14, 23-24 (1st Cir. 2022). In other words, the First Circuit expects district courts "to take heed of" the new policy statement when determining whether a defendant is eligible for compassionate release. United States v. Rivera-Rodríguez, 75 F.4th 1, 18 n.22 (1st Cir. 2023).

On November 1, 2023, the USSC's policy statement on motions for compassionate release initiated by prisoners took effect. See U.S.S.G. § 1B1.13. Accordingly, the "window" in which Ruvalcaba granted district courts broad discretion has "clos[ed]." See United States v. Gonzalez, 68 F.4th 699, 704 n.2 (1st Cir. 2023) (noting the gap in guidance on prisoner-initiated motions and the then-upcoming amendments to U.S.S.G. § 1B1.13).

The policy statement outlines six circumstances that individually or in combination may constitute extraordinary and compelling reasons warranting relief: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether defendant was a victim of abuse while incarcerated; (5) "other reasons" similar in gravity to the

preceding four reasons; and (6) whether the defendant received an unusually long sentence. U.S.S.G. § 1B1.13(b).

Moreover, the court must determine that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The factors relevant to dangerousness consist of the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of Defendant, and the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. 18 U.S.C. § 3142(g).

The defendant bears the burden of establishing that extraordinary and compelling reasons exist, that he is no longer a danger to the community, and that the Section 3553(a) factors favor release. United States v. Galiany-Cruz, 2023 WL 6458535, at *1 (1st Cir. 2023); United States v. Miranda-Rojas, 2023 WL 7181650, at *1 (1st Cir. 2023).

### B. Rutherford v. United States and its modifications to the compassionate release regime

On May 28, 2026, the Supreme Court of the United States issued its opinion in Rutherford v. United States. 2026 WL 1485535, at *3-11 (U.S. May 28, 2026). While recognizing that the First Circuit had permitted its District Courts to base reductions on nonretroactive sentencing changes, *see* Ruvalcaba, 26 F.4th 14, the

Supreme Court overruled that rule. Rutherford, 2026 WL 1485535, at *5 n.2.

The Supreme Court held that the Sentencing Commission had overstepped its statutory authority by adopting a definition of "extraordinary and compelling" inconsistent with the Sentencing Commission's governing statute. Id. at *10. Hence, it held that "[t]he statutory text and structure make clear that Congress's nonretroactive change to [a sentencing law]—considered by itself or in combination with other factors—cannot make a prisoner eligible for compassionate release." Id. Put differently, the Supreme Court concluded that "[w]hen Congress declines to make a sentencing amendment retroactive, the fact that a preamendment sentence is longer than it would have been postamendment is not an extraordinary and compelling reason that warrants a sentence reduction." Id. at *6 (citing 18 U. S. C. § 3582(c)(1)(A)(i)) (citation modified).

### III. ANALYSIS

In González's case, the Court finds that no extraordinary and compelling reasons exist that permit the reduction of his sentence. Moreover, he has not shown that Section 3142(g) and the Section 3553(a) factors favor his release. As a result of these findings on the merits of González's claim, the Court does not reach the exhaustion issue raised by the Government.

A. **Rutherford forecloses González's "extraordinary and compelling" reason**

In Ruvalcaba, the First Circuit formerly found that Congress never "expressly prohibited district courts from considering non-retroactive changes in sentencing law." 26 F.4th 14, 25. Thus, when Ruvalcaba was still the law of the land in this Circuit, this Court possessed the discretion to conduct "an **individualized review of a defendant's circumstances and [effectuate] a sentence reduction . . . based on any combination of factors (including unanticipated post-sentencing developments in the law)**." Id. at 26 (citations omitted) (emphasis added).

Rutherford now trumps Ruvalcaba and controls the threshold issue in the case at bar. The *Motion*, while at times unclear as to which "extraordinary and compelling" ground it invokes, seems to rely in large part on an alleged disparity between the sentence González serves and the term he could **potentially** serve if sentenced today. That disparity, if it even exists, results inexorably from nonretroactive changes concerning mandatory sentencing. Under Rutherford, such nonretroactive shifts plainly cannot establish "extraordinary and compelling" justifications for compassionate release. 2026 WL 1485535, at *10. To put it in the words of the Supreme Court from last week, the fact that the "preamendment sentence is longer than it would have been

postamendment is not an extraordinary and compelling reason that warrants a sentence reduction." Id. at *6 (citation modified).

It is unclear to the Court whether a gross disparity between González's sentence and the sentence likely to be imposed today ever existed, given that González freely admits that "[e]ven today, the applicable Guidelines range for Mr. Gonzalez-Arimont's conviction is life imprisonment." (Docket No. 110 at 6). Rather, his argument seems to depend on the conjecture that a judge **might** grant him a downward variance in the exercise of discretion under a nonmandatory sentencing regime. Nevertheless, the Supreme Court has foreclosed González's argument in Rutherford, and so the Court need not reflect further on whether a gross disparity truly existed.

### B. Youth and rehabilitation cannot serve as grounds for compassionate relief on their own

With the argument based on the nonretroactive demise of mandatory sentencing disposed of, the Court turns to González's surviving grounds for relief. The remainder of the *Motion* consists largely of references to his youthfulness at the time of offense and alleged subsequent rehabilitation. Neither can justify compassionate relief in the case at bar.

With respect to youth, the First Circuit has held that its District Courts have ample discretion to consider "updated information on the mental development of youths" or age-based

arguments and nevertheless decline to grant compassionate release. United States v. Sepulveda, 34 F.4th 71, 77 (1st Cir. 2022). Although the Court may consider González's youthfulness at the time of the offense as part of a more holistic review, the Supreme Court and the First Circuit have repeatedly indicated that compassionate release is not a vehicle for converting run-of-the-mill mitigation factors or classic post-conviction arguments into "extraordinary and compelling" reasons decades after the initial decision. See, e.g., Rutherford, 2026 WL 1485535, at *2 ("the heartland of compassionate release . . . has long been defined by a prisoner's personal circumstances, such as medical condition, age, and family circumstances"); United States v. Gonzalez, 68 F.4th 699, 704 n.3 (1st Cir. 2023) ("We have also clarified that the mere fact of a . . . mandatory life sentence . . . cannot, standing alone, serve as the basis for a sentence reduction and that correct application of the 'extraordinary and compelling' standard for compassionate release naturally precludes classic post-conviction arguments, without more, from carrying such motions to success") (internal quotations omitted) (citation modified). Here, the Court rules that González's age, while an appropriate mitigating factor were he to be sentenced today, does not alone warrant compassionate release.

A justification centered solely on González's alleged rehabilitation is even more suspect. Rutherford, 2026 WL 1485535, at *8 ("[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason") (citing 28 U.S.C. § 994(t)) (internal quotation marks omitted); Gonzalez, 68 F.4th at 704 n.3.

## C. Independently, Section 3142(g) and Section 3553(a) weigh against reducing González's sentence

Even if, arguendo, the Court had found extraordinary and compelling circumstances, a sentence reduction would be appropriate only if the factors set forth in 18 U.S.C. § 3553(a) independently favored release. Moreover, the same applies to the necessary showing that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The factors relevant to dangerousness consist of the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of Defendant, and the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. 18 U.S.C. § 3142(g).

González bears the burden of establishing that he is not a danger to the community and that the Section 3553(a) factors favor his release. *See, e.g.,* Galiany-Cruz, 2023 WL 6458535, at *1;

Miranda-Rojas, 2023 WL 7181650, at *1. On the present record, he has failed to carry it.

Although it is true that González has by now served a lengthy sentence, the Court is ultimately unpersuaded that reducing his sentence "protect[s] the public from further crimes" or "assure[s] . . . the safety of any other person and the community." 18 U.S.C. §§ 3553(a)(2)(C), 3142(g). González's recent BOP disciplinary record gives the Court the most pause. (Docket Nos. 110-11 at 29, 121 at 13-16). The record reflects repeated and serious disciplinary issues, commencing from early in González's sentence and continuing nearly to the time of briefing. Id. González's pace of violations has lessened since his highly prolific first years in prison; nevertheless, he appears to have accumulated dozens of disciplinary infractions since 1997. Id. One of these involved an assault resulting in serious injury. (Docket No. 110-11 at 29).

The Court also cannot disregard the recency of some of the relevant conduct. González's April 2025 "inmate discipline data" contains evidence of an infraction from just two months before April 2025 and others from 2023 and 2022. Id. at 16-17. The record suggests that González has made progress, but it does not show that the progress would warrant early release despite the seriousness of the offense and the need to protect the public. The Court must determine at this juncture that "defendant is not a

danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). On this record, the Court cannot make that finding.

## IV.  CONCLUSION

In light of <u>Rutherford</u>, which precludes a finding of extraordinary and compelling circumstances in this case, González's *Motion* at Docket No. 110 is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of June 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge